UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONG HOANG NGUYEN,<br><br>          Petitioner,<br><br>v.<br><br>JOSHUA JOHNSON, et al.,<br><br>          Respondents. | Case No. 5:26-cv-03976-KES<br><br>ORDER GRANTING THE PETITION IN PART AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I.     INTRODUCTION

Long Hoang Nguyen ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  The parties have consented to the jurisdiction of the Magistrate Judge.  (Dkt. 9.)  The Petition is granted and Respondents are directed to immediately release Petitioner from custody.

## II.     PROCEDURAL HISTORY

Petitioner filed the present Petition on July 16, 2026.  (Dkt. 1.)  The Petition raises the following claims:

Ground 1(a): Respondents violated Petitioner's right to procedural due process and 8 C.F.R. §§ 241.4 and 241.13 when they revoked Petitioner's order of supervision ("OSUP") and detained him, because they did not provide him with written notice and an informal interview. (Pet. at 14, 16-17, ¶¶ 1-6, 11-13.) He also argues that the "detention of Petitioner without notice and a hearing violates his right to procedural due process, constituting a violation of the Fifth Amendment." (Pet. at 19, ¶ 18.)

Ground 1(b): Respondents violated Petitioner's right to procedural due process and 8 C.F.R. § 241.13 when they revoked Petitioner's OSUP and detained him, because there is no significant likelihood of his removal in the reasonably foreseeable future. (Pet. at 15-19, ¶¶ 7-10, 13-18.)

Ground 2: Respondents violated Petitioner's right to substantive due process because he is "neither a flight risk nor a danger" and his removal is not imminent, meaning his detention is "not reasonably related to any legitimate purpose…." (Pet. at 19-21, ¶¶ 19-28.)

Ground 3: To the extent Respondents plan to remove Petitioner to a third country, doing so "without adequate notice and opportunity to raise protection-based claims would violate due process and the protections embodied in the governing regulations concerning withholding and Convention Against Torture ["CAT"] procedures." (Pet. at 21-24, ¶¶ 29-37.)

Ground 4: Respondents violated the Administrative Procedure Act ("APA") because revoking his OSUP was arbitrary and capricious and did not comply with DHS's own regulations. (Pet. at 24-26, ¶¶ 38-44.)

Count 5: Petitioner's detention is "ultra vires" because DHS has improperly delegated authority to revoke OSUPs to Deportation Officers. (Pet. at 26-28 ¶¶ 45-53.)

The Petition seeks: (a) immediate release from custody; (b) a declaration that the delegation scheme for revoking OSUPs is invalid; (c) enjoining Respondents

2

from re-detaining Petitioner unless and until they comply with the applicable regulations and obtain a travel document for his removal; and (d) enjoining Petitioner's removal to a third country unless they provide Petitioner with certain procedural protections.  (Pet. at 29-30.)

Respondents answered the Petition on July 23, 2026.  ("Answer" at Dkt. 10.)

## III.   FACTUAL RECORD

### A.   Entry into the U.S. and Lawful Permanent Resident Status.

Petitioner is a 50-year-old immigrant who has lived in the U.S. for approximately 46 years.  (Pet'r Decl. ¶¶ 1-2 / Dkt. 1 at 36.)  Petitioner's father served in the South Vietnamese Army, fought the Viet Cong beside the United States military, and brought his family to the United States as refugees when Petitioner was four years old.  (Pet'r Decl. ¶ 14 / Dkt. 1 at 37.)  Petitioner has not returned to Vietnam since then.  (Pet'r Decl. ¶ 14 / Dkt. 1 at 37.)  He became a lawful permanent resident of the U.S. in 1982.  (Pet'r Decl. ¶ 2 / Dkt. 1 at 36.)

### B.   Conviction and Removal Order (2004-2009).

After Petitioner's brother died in a car accident, Petitioner developed depression.  (Pet'r Decl. ¶¶ 3-4 / Dkt. 1 at 36.)  His mental health struggles led to trouble with the law, and in 2004, he pled guilty to a drug-related offense.  (Pet'r Decl. ¶ 5 / Dkt. 1 at 36; Pet. Ex. C / Dkt. 1 at 73 (federal criminal judgment under 21 U.S.C. § 843 for illegal use of a communication facility to distribute, manufacture, or dispense controlled substances).)[1]

Petitioner was arrested by ICE on August 5, 2009.  (Pet. Ex. D / Dkt. 1 at 83 (warrant for arrest of alien).)  On September 22, 2009, as a result of his criminal conviction, an immigration judge ("IJ") ordered Petitioner removed to Vietnam.

---

[1] Petitioner states, "At the time of my conviction, the attorney representing me did not inform me that the conviction would make me removable."  (Pet'r Decl. ¶ 5 / Dkt. 1 at 36.)

(Pet'r Decl. ¶ 6 / Dkt. 1 at 36; Answer Ex. A / Dkt. 10-1 at 6 (removal order).) Petitioner did not appeal.  See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 025-347-761 (Vietnam), last accessed July 28, 2026).)

**C.      Release on OSUP (December 2009-May 2026).**

About 90 days later, on December 23, 2009, ICE released Petitioner from custody on an order of supervision ("OSUP").  (Pet. Ex. D / Dkt. 1 at 85 (the OSUP).)  Petitioner had no further criminal convictions or police contact for the next 16 years.  (Pet'r Decl. ¶ 13 / Dkt. 1 at 37.)  There is no evidence that he ever violated the terms of his OSUP.

On February 13, 2026, Petitioner appeared for an annual ICE check-in at the Santa Ana ICE office.  (Pet'r Decl. ¶ 8 / Dkt. 1 at 36.)  ICE agents told him that "they didn't have [his] documents" and held him for 8 hours.  (Pet'r Decl. ¶ 8 / Dkt. 1 at 36.)  Then they released him and told him "to go to the Intensive Supervision Appearance Program ("ISAP") building to have an ankle monitor put on."  (Pet'r Decl. ¶ 8 / Dkt. 1 at 36.)  Petitioner remained on ISAP monitoring for two weeks.  (Pet'r Decl. ¶ 9 / Dkt. 1 at 37.)

**D.      Current Detention (May 13, 2026).**

Next, ICE sent Petitioner a letter requiring him to appear for a check-in at the Santa Ana ICE office on May 13, 2026.  (Pet'r Decl. ¶ 9 / Dkt. 1 at 37; Pet. Ex. H / Dkt. 1 at 97 (the letter).)  Petitioner did so.  "At the check-in, [Petitioner] was told by the ICE agents that [his] [OSUP] was revoked and that they were going to try to deport [him] to Korea or Africa.  They told [him] that [he] needed to get [his] own travel documents."  (Pet'r Decl. ¶ 9 / Dkt. 1 at 37.)

According to ICE records, an administrative arrest warrant for Petitioner was issued on May 13, 2026.  (Pet. Ex. D / Dkt. 10-4.)

According to ICE records, Petitioner was served with a written notice of revocation on May 13, 2026, which stated that his OSUP was being revoked under

4

8 C.F.R. § 241.13(i) because "circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future," i.e., "ICE is seeking a travel document to effect your expeditious removal to Vietnam." (Answer Ex. B / Dkt. 10-2 (notice with certificate of service).)  The notice was signed by "RMD Detention & Deportation Officer" Jessie D. Gonzalez.  (Id. at 2.)  The notice states, "(Note: 8 C.F.R. § 241.4 revocation must be EAD or FOD where there is a public interest to do so and referral to EAD not reasonable; 241.13 may be by RMD)."  (Id. at 2.)  The certificate of service states that it was served on Petitioner by Officer O. Vargas.  (Id. at 3.)  It bears what appears to be Petitioner's signature.  (Id. at 3.)

According to ICE records, Petitioner was also given an informal interview to contest the reasons for the OSUP revocation.  (Answer Ex. C / Dkt. 10-3 (Alien Informal Interview form).)  Petitioner stated, "I have been very complicant [sic] and report[ed] to ICE [for] year[s].  I have a job and have been paying my taxes.  I have been a model citizen and have not broken the law, not even a citation of driving.  An attorney is helping open my case.  We just need more time for the case to see a judge.  I am also trying to get my travel documents to self-deport.  Please some consideration to give me more time."  (Id.)

After about 12 hours, Petitioner was transferred to the ICE detention center in Adelanto.  (Pet'r Decl. ¶ 10 / Dkt. 1 at 37.)  Petitioner remains in ICE custody in Adelanto, California.  ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 025-347-761 (Vietnam), last accessed July 28, 2026).)

"On May 27, 2026, ICE agents pulled [Petitioner] out of the detention room [he] was in to take [his] photograph.  They also asked [Petitioner] if [he] had travel documents and any family ties in Vietnam.  The agents told [Petitioner] that if [he] did not assist them with obtaining travel documents, they would deport [him] to Africa."  (Pet'r Decl. ¶ 11 / Dkt. 1 at 37.)  On the same day, DHS requested a travel document from Vietnam.  (Answer Ex. A / Dkt. 10-1 (letter to Vietnamese

embassy).)

Petitioner's detention has placed great stress on his family, because he is responsible for taking care of his elderly, retired parents and helps care for his autistic nephew and his fiancée's teenage son.  (Pet'r Decl. ¶ 18 / Dkt. 1 at 38; see also Torres Decl. ¶¶ 8-11 / Dkt. 1 at 41 (declaration of Petitioner's fiancée).)

## IV.    DISCUSSION

### A.    Section 1252(g) Does Not Deprive the Court of Jurisdiction Over Petitioner's Claims.

Respondents argue that Petitioner's claims challenge a decision or action by DHS to execute removal orders, which means they are barred by 8 U.S.C. § 1252(g).  (Answer at 16-17.)  However, claims challenging a noncitizen's[2] detention during the removal process are not barred by this provision.  See, e.g., Shi v. Semaia, No. 26-cv-02054-MBK, 2026 WL 1288656, at *3 (C.D. Cal. May 7, 2026) ("Petitioner's claims challenge his detention, not the Government's 'prosecutorial discretion' to 'commence' removal proceedings.  As such, Section 1252(g) does not apply."); Mosqueda v. Noem, No. 25-cv-02304-CAS-BFM, 2025 WL 2591530, at *3, 2025 U.S. Dist. LEXIS 174828, at *8 (C.D. Cal. Sept. 8, 2025) ("Since petitioners' bond denial claims do not challenge any decision to commence proceedings, adjudicate cases, or execute removal orders, the Court finds that section 1252(g) does not present a jurisdictional bar to judicial review."); Zavala v. Noem, No. 25-cv-2686-PA-DFM, 2025 WL 3514086, at *3, 2025 U.S. Dist. LEXIS 250748, at *4-5 (C.D. Cal. Dec. 4, 2025) (collecting cases and

---

[2] This order generally uses the term noncitizen rather than alien.  See Avilez v. Garland, 69 F.4th 525, 527 n.1 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' … while the word noncitizen, which is synonymous … avoids such connotations. Thus, noncitizen seems the better choice.").

6

granting temporary restraining order based on the reasoning of Mosqueda).

**B.    Petitioner is Entitled to Relief on Ground 1(a), His Claim that His OSUP Revocation Violated DHS Regulations.**

**1.    Parties' Arguments.**

The Petition argues that Respondents violated Petitioner's right to procedural due process and 8 C.F.R. §§ 241.4 and 241.13 when they revoked Petitioner's order of supervision ("OSUP") and detained him, because they did not provide him with written notice and an informal interview.  (Pet. at 14, 16-17, ¶¶ 1-6, 11-13.)

Respondents respond, "Petitioner was timely issued a Notice of Revocation of Release upon his detention, notifying him of changed circumstances in his case such that there is a significant likelihood of removal in the reasonably foreseeable future. … He was also provided an informal interview."  (Answer at 12.)  Alternatively, they argue, "Even if this process is defective in any manner … the remedy now is not to override the statutory grant of detention authority under 8 U.S.C. § 1231, but instead to cure any purported post-revocation defect by narrowly tailored means well short of release from detention."  (Answer at 12; see also id. at 14-15.)

Petitioner replies that the notice of revocation was insufficient because "[i]t identifies no facts particular to Petitioner," "does not say what changed, when it changed, or why removal became significantly likely after nearly seventeen years of compliant supervised release."  (Reply at 6.)  Petitioner also notes that Respondents' travel document request "recites Annex 9, Chapter 5.26 of the Convention on International Civil Aviation, under which a contracting State must respond to such a request 'within a reasonable period of time and not more than 30 days after such a request was made.'"  (Reply at 6 (citing Answer Ex. A / Dkt. 10-1).)  He points out, "More than thirty days elapsed before Respondents filed their Answer, and Vietnam has not responded."  (Reply at 6-7.)

7

## 2.    Legal Standard.

"Once ICE releases a noncitizen on an OSUP …, 'ICE's ability to re-detain that noncitizen is constrained by its own regulations.'" Manivong v. Bondi, No. 25-cv-6747-JFW-KES, 2025 WL 3211455, at *5, 2025 U.S. Dist. LEXIS 171812, at *13 (C.D. Cal. Sept. 3, 2025) (quoting Roble v. Bondi, No. 25-cv-3196, 2025 WL 2443453, at *3, 2025 U.S. Dist. LEXIS 164108, at *6 (D. Minn. Aug. 25, 2025)).

Under 8 C.F.R. § 241.4, an OSUP may be revoked if a noncitizen violates the conditions of their release, or if specific ICE officials find that (1) "the purposes of release have been served," (2) "it is appropriate to enforce a removal order or to commence removal proceedings against" the noncitizen, or (3) the "conduct" of the noncitizen, "or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(1)-(2).

However, a separate regulation, 8 C.F.R. § 241.13, was promulgated in 2001 in response to Zadvydas v. Davis, 533 U.S. 678 (2001). It applies where the noncitizen "has provided good reason to believe there is no significant likelihood of removal … in the reasonably foreseeable future." 8 C.F.R. § 241.13(a); see generally Hoang v. Santa Cruz, No. 25-cv-2766-JGB-JC, 2025 WL 3141857, at *3, 2025 U.S. Dist. LEXIS 212737, at *9 (C.D. Cal. Oct. 28, 2025) ("Following the Supreme Court's decision in Zadvydas v. Davis, ICE issued 8 C.F.R. § 241.13 to govern custody determinations for noncitizens subject to a final order of removal whose removal period has expired and where there is not a significant likelihood of removal."). If there is a determination under § 241.13 that there is no such significant likelihood, § 241.13(b)(1) allows for the release of the noncitizen under an OSUP if they are not a danger to the public or a risk of flight.

"[I]f a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l)…." Hoang, 2025 WL 3141857, at *3, 2025 U.S. Dist. LEXIS 212737, at *9. Section 241.13(i) allows

DHS to revoke a noncitizen's OSUP and re-detain them if they violate any of the conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2).

Regardless of the reason for the revocation, both §§ 241.4 and 241.13 require that the noncitizen be (a) "notified of the reasons for revocation of his or her release," and (b) given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation *stated in the notification*."  8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3) (emphasis added).  Thus, "ICE's regulations require that when an alien is notified of a revocation of release, the 'reasons' for that revocation must be stated in the notification."  Nouri v. Herrera, No. 25-cv-1905-JFW-DTB, 2025 U.S. Dist. LEXIS 171809, at *13 (C.D. Cal. Sep. 3, 2025).

### 3.   Analysis.

Respondents' evidence shows that Petitioner was served with a written notice stating why his OSUP was being revoked and an informal interview to respond to that notice.  (Answer Ex. B / Dkt. 10-2 (notice); Answer Ex. C / Dkt. 10-3 (interview form).)  However, the written notice was insufficient because it failed to identify any facts specific to Petitioner, to which Petitioner could have meaningfully responded at the informal interview.  The notice simply stated that "circumstances have changed" because ICE was now "seeking a travel document to effect your expeditious removal to Vietnam."[3]  (Answer Ex. B / Dkt. 10-2); see, e.g., Esmail v. Noem, No. 25-cv-08325-WLH-RAO, 2025 WL 3030590, at *5,

---

[3] Notably, ICE did not actually apply for a travel document until two weeks *after* Petitioner was detained.  (See Answer. Ex A / Dkt. 10-1.)  Even if that application required Petitioner's photograph and fingerprints (see id. at 9-11), it is unclear why DHS could not obtain those from Petitioner at his regular check-in appointments, without detaining him.

2025 U.S. Dist. LEXIS 215023, at *8 (C.D. Cal. Sept. 12, 2025) ("The Notice contains no factual allegations that led to the custody redetermination. … As the Notice does not 'identify any specific changed circumstances[,]' it is insufficient to put Petitioner on notice as to what led to the revocation of his OSUP.") (citation omitted).

Accordingly, Petitioner is entitled to relief on Ground 1(a). Even if relief on this claim would be something short of release from custody, as Respondents' argue, Petitioner is entitled to release on the other grounds discussed below.

**C.    Petitioner is Entitled to Relief on Ground 1(a), Because He Was Entitled to a Pre-Deprivation Hearing As a Matter of Due Process.**

### 1.    Parties' Arguments.

Petitioner argues, "Respondents' detention of Petitioner without notice and a hearing violates his right to procedural due process, constituting a violation of the Fifth Amendment." (Pet. at 19, ¶ 18.) Respondents respond that the Immigration and Nationality Act "does not contemplate a pre-detention hearing," and "the government has very broad authority to revoke supervised release that it has granted." (Answer at 13.)

### 2.    Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural

protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**3.      Analysis.**

a.      Liberty interest and private interest affected

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690. To determine whether a specific conditional release rises to the level of a protected liberty interest, '[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey [v. Brewer, 408 U.S. 471 (1972)].'" Omer G. G. v. Kaiser, No. 25-cv-01471, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (quoting Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010)).

In Morrissey, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work

and travel, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Omer G. G., 2025 WL 3254999, at *5 (parallel citations omitted).

Many district courts in this circuit have held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases). Petitioner also has a substantial private interest in remaining out of custody because that "would allow him to care for and continue to provide for his family…." Domingo, 2025 WL 1940179, at *3, 2025 U.S. Dist. LEXIS 133824, at *6.

Accordingly, this factor weighs in favor of Petitioner.

             b.     Risk of an erroneous deprivation and value of additional procedural safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno,

2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural safeguard.  Accordingly, this factor weighs in favor of Petitioner.

c.       Countervailing government interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing.  Ramos-Maldonado v. Semaia, No. 26-cv-1202-SSS-AS, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same).  Additionally, the burden of a pre-detention hearing is low.  In immigration court, custody hearings are routine and impose a minimal cost.  In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days.  Respondents have presented no evidence to the contrary.

Accordingly, all three of the Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing.

d.       Appropriate remedy is release, not post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights.  Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in

this context.  See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").[4]

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights.  See, e.g., Medrano-Rocha, 2026 WL 411355, at *7 (ordering petitioner's release and enjoining re-detention "without providing him a pre-detention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required"); Nieves, 2026 WL 931143, at *4 (granting release and enjoining re-detention "unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention"); Fernandez, 2026 WL 136229, at *7 (ordering release and enjoining re-detention "unless [Respondents] demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that there has been a material change in circumstances justifying Petitioner's re-detention").

---

[4] Aguilar v. Semaia, No. 26-cv-00023-MCS-SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an IJ. Id. at *5.

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

### D. Petitioner is Entitled to Relief on Ground 1(b), His *Zadvydas* Claim.

#### 1. Parties' Arguments.

Petitioner argues that Respondents violated his right to procedural due process and 8 C.F.R. § 241.13 when they revoked his OSUP and detained him, because there is no significant likelihood of his removal in the reasonably foreseeable future. (Pet. at 15-19, ¶¶ 7-10, 13-18.)

Respondents argue, "Petitioner has not been in ICE custody for over six months." (Answer at 8.) They also argue, "Petitioner relies on an outdated Vietnamese policy pursuant to which it did not accept back its immigrants who left the country before 1995," a policy which "has since been dismantled." (Answer at 6 (citing Trinh v. Homan, 466 F. Supp. 3d 1077, 1090 (C.D. Cal. 2020).) As proof that some removals to Vietnam are taking place, they cite several habeas petitions from 2025 that they characterize as mooted due to the Vietnamese petitioners' removal to Vietnam. (Answer at 6-7, 10-11.)

Petitioner replies that, because he was previously released on an OSUP, Respondents (rather than Petitioner) bear the burden of proving removal is foreseeable. (Reply at 4-5.) He argues they have not met this burden because they "identify no communication from Vietnam concerning [Petitioner], no showing that he satisfies the 2020 Memorandum of Understanding's undisclosed eligibility criteria, no issued travel document, no acceptance, and no removal date." (Reply at 2.)

#### 2. Legal Standard.

"When a final order of removal has been entered against [a noncitizen], the Government must facilitate that [noncitizen's] removal within a 90-day 'removal period.'" Thai v. Ashcroft, 366 F.3d 790, 793 (9th Cir. 2004) (citation omitted); 8

U.S.C. § 1231(a)(1)(A). Where removal cannot be accomplished within the removal period, continued detention is authorized by 8 U.S.C. § 1231(a)(6). Detention during this period is not mandatory. Section 1231(a)(6) "provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6) does not authorize the government to detain a noncitizen awaiting removal "indefinitely" beyond the statutory 90-day removal period. 533 U.S. at 689. Rather, the Supreme Court construed the statute to contain an implicit "reasonable time" limitation. Id. at 682. The Court held that "the statute, read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." Id. at 682, 689. The Court determined that six months was a presumptively reasonable period of detention. Id. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. "For detention to remain reasonable, as the period or prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

Following Zadvydas, DHS enacted 8 C.F.R. § 241.13 to comply with that ruling. That regulation provides:

This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the [noncitizen] has provided good reason to believe there is no significant likelihood of

16

removal to the country to which he or she was ordered removed, or to

a third country, in the reasonably foreseeable future.

8 C.F.R. § 241.13(a). The regulation states that the noncitizen may be released on an OSUP if DHS finds that their "removal is not significantly likely in the reasonably foreseeable future…." 8 C.F.R. § 241.13(h)(1). Once they have been released on an OSUP, that OSUP may be revoked only if they violate the conditions of their release, see 8 C.F.R. § 241.13(i)(1), or if "on account of *changed circumstances*, [DHS] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2) (emphasis added). Thus, the regulation "requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Nguyen v. Hyde, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) (quoting Kong v. United States, 62 F.4th 608, 619-20 (1st Cir. 2023)).

Many district courts have held that, once the noncitizen is released on an OSUP, based on a finding that they are unlikely to be removed, then when DHS seeks to revoke that OSUP, the *government* rather than the noncitizen bears the burden of demonstrating that "changed circumstances" now render the noncitizen's removal significant likely in the reasonably foreseeable future. See, e.g., Yan-Ling X. v. Lyons, No. 25-cv-01412, 2025 WL 3123793, at *3, 2025 U.S. Dist. LEXIS 220277, at *8 (E.D. Cal. Nov. 7, 2025) ("[T]he burden-shifting framework from Zadvydas does not apply" where the petitioner has already been "issued a final order of removal, detained, and subsequently released on an" OSUP, in part because "imposing the burden of proof on the [noncitizen] each time he is re-detained would lead to an unjust result and serious due process implications"); Nazarian v. Noem, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *5, 2025 U.S. Dist. LEXIS 229051, at *10-11 (C.D. Cal. Nov. 3, 2025) ("Contrary to Respondents' assertions, Petitioner is not challenging his detention during an initial

17

removal period. … Rather, because Petitioner challenges his re-detention after already being released on an OSUP, 'ICE's own regulations [ ] place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future.'"); El Abed v. Noem, No. 25-cv-02361-FWS-JDE, 2025 WL 3691910, at *4, 2025 U.S. Dist. LEXIS 263943, at *11-12 (C.D. Cal. Oct. 28, 2025) ("Because there appears to be no dispute that Petitioner did not violate the conditions of release, Respondents have the burden to establish changed circumstances that make removal significantly likely in the reasonably foreseeable future and have not done so.").

This is both logical and consistent with Zadvydas. If a noncitizen was previously released on an OSUP under 8 C.F.R. § 241.13, then DHS had some reason to believe that, at that time, their removal was not significantly likely in the reasonably foreseeable future. Those same reasons—as well as the passage of some amount of time while the noncitizen was out on an OSUP—generally would also serve to rebut the initial presumption in Zadvydas when the government seeks to revoke the OSUP. At that point, the burden falls on DHS, both under Zadvydas and 8 C.F.R. § 241.13(i)(2), to show that something has changed that now renders removal likely.

### 3.     Analysis.

Respondents argue, first, that Petitioner's Zadvydas claim fails because he has been detained for less than six months. (Answer at 8.) This alone does not bar his claim. Zadvydas recognized the six-month time frame to give "necessary Executive leeway" and "limit the occasions when courts will need to" address the issue. 533 U.S. at 700-01. It referred to this time period as a "*presumptively* reasonable period of detention," implying that this presumption could be rebutted. Id. at 701 (emphasis added). Although the Ninth Circuit has not yet ruled on the issue, many district courts in this Circuit have held that a petitioner may attempt to rebut this presumption even before six months have elapsed. See Trinh v. Homan,

466 F. Supp. 3d 1077, 1093 (C.D. Cal. 2020) ("Zadvydas established a 'guide' for approaching detention challenges, not a categorical prohibition on claims challenging detention less than six months."); Tumasov v. Doe 1, No. 26-cv-590, 2026 WL 458146, at *2, 2026 U.S. Dist. LEXIS 33312, at *17-18 (S.D. Cal. Feb. 18, 2026) (collecting cases finding "that the six-month presumption in Zadvydas is rebuttable").  Otherwise, the government could "detain noncitizens ordered removed for up to six months even when their removal is impossible."  Tumasov, 2026 WL 458146, at *2, 2026 U.S. Dist. LEXIS 33312, at *7 (quoting Zavvar v. Scott, No. 25-cv-2104, 2025 WL 2592543, at *5, 2025 U.S. Dist. LEXIS 175897, at *18 (D. Md. Sept. 8, 2025)).  Allowing a detainee to bring such a claim before six months has elapsed is particularly appropriate in Petitioner's situation, where the government itself previously found removal unlikely and released Petitioner on an OSUP.

Respondents' briefing also incorrectly places the burden of proof on Petitioner to prove that his removal to Vietnam is not likely in the foreseeable future.  (See, e.g., Answer at 9 (arguing that "Petitioner cannot carry his burden to show" removal is not foreseeable).)  In December 2009, Petitioner was released and placed on an OSUP based on a finding that there was no significant likelihood of his removal to Vietnam in the reasonably foreseeable future.  Almost 17 years passed.  Respondents do not contend that Petitioner violated the terms of his OSUP during that time.  The Court therefore finds that, to justify the current OSUP revocation and detention, the burden is on *Respondents* to show that changed circumstances now render Petitioner's removal significantly likely in the reasonably foreseeable future.

Respondents argue that ICE submitted a request for a travel document for Petitioner on May 27, 2026—about two weeks *after* he was detained—and that Vietnam regularly issues such travel documents.  (Answer at 10.)  Respondents cite fact-finding the district court made in Trinh v. Homan, 466 F. Supp. 3d 1077

19

(C.D. Cal. 2020), wherein the district court found:

> The parties now agree that Vietnam does not maintain a blanket policy of refusing to repatriate pre-1995 immigrants.  Instead, Vietnam now considers each request from ICE on a case-by-case basis.  ICE frequently requests travel documents from Vietnam for pre-1995 immigrants, and Vietnam issues them in a non-negligible portion of cases.

Trinh, 466 F. Supp. 3d at 1090 (record citations omitted); (Answer at 6).  In the same decision, however, the court declined to issue class-wide relief under Zadvydas for pre-1995 Vietnamese immigrants due to "the individualized inquires involved in each class member's Zadvydas claim…." Id. at 1091-92.  The court noted that "although many class members may be able to show that there is 'good reason to believe' their removal is unlikely, others will not." Id. at 1092.  Thus, this decision actually underscores the need for Respondents to produce some evidence that is specific to Petitioner himself.

District courts have granted habeas relief to Vietnamese detainees on similar records.  See, e.g., Luu v. Bowen, No. 25-cv-03145-MEMF-SP, 2025 WL 3552298, at *7, 2025 U.S. Dist. LEXIS 257061, at *19 (C.D. Cal. Dec. 11, 2025) ("Respondents' reliance on three instances of an individual being removed to Vietnam is not persuasive to show that Luu himself faces a 'significant likelihood of removal in the reasonably foreseeable future.' … Even if the Government can establish that Luu is removable under the 2020 MOU [Memorandum of Understanding], Vietnam has total discretion whether to accept particular non-citizens so the 2020 MOU is insufficient on its own to show a significant likelihood of removal."); Quan v. Bowen, No. 25-cv-02546-HDV-PVC, 2025 WL 3691858, at *5, 2025 U.S. Dist. LEXIS 263964, at *13 (C.D. Cal. Nov. 14, 2025) ("[T]he government provides no specific statistics regarding how often it is requesting—and how often it is receiving—travel documents from Vietnam in

20

recent days for noncitizens who, like Petitioner, arrived in the United States before 1995. … Indeed, at oral argument, counsel for the government admitted that 'we just don't know one way or another at this point' whether Petitioner is likely to be removed in the reasonably foreseeable future."); Hoac v. Becerra, No. 25-cv-01740, 2025 WL 1993771, at *4, 2025 U.S. Dist. LEXIS 136002, at *10 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future. … Likewise, Respondents rely on the '2020 treaty of memorandum of understanding' to support their assertion of changed circumstances but have not provided the document for the court's consideration. In Van Nguyen [v. Hyde, 788 F. Supp. 3d 144 (D. Mass. 2025)], the district court found that a 2020 Memorandum of Understanding, establishing a process of review and issuance of travel documents for Vietnamese citizens ordered removed, alone, was not enough to show that a changed circumstance had occurred."); see also Pham v. Warden, No. 26-cv-793-FMO-KES, 2026 U.S. Dist. LEXIS 59250 (C.D. Cal. Mar. 19, 2026); Vu v. Lyons, No. 26-cv-02930-KES, 2026 WL 1722908, at *4, 2026 U.S. Dist. LEXIS 13072 (C.D. Cal. June 11, 2026).

Petitioner is therefore entitled to relief on his Zadvydas claim. The Court will grant this claim and order Petitioner's immediate release from custody.

**E.**     **Petitioner is Entitled to Relief on Ground 3, His Claim About Third Country Removal.**

Petitioner argues, "To the extent Respondents plan to remove Petitioner to a third country, doing so without adequate notice and opportunity to raise protection-based claims would violate due process and the protections embodied in the governing regulations concerning withholding and Convention Against Torture ["CAT"] procedures." (Pet. at 21-24, ¶¶ 29-37.)

Respondents' Answer fails to specifically respond to this claim. Petitioner argues the Court should grant relief on this claim due to Respondents' lack of

21

opposition, citing the Court's Standing Order for § 2241 Immigration Petitions. (Reply at 10.)  That order, issued in this case on July 17, 2026, states in relevant part, "**Failing to file an answer by the due date−or filing an answer that fails to substantively respond to any claim in the petition−may result in the Court granting the petition or claim as unopposed.**"  (Dkt. 7 at 1-2) (emphasis in original).

Respondents' Answer does state that "DHS intends to remove Petitioner to Vietnam" (Answer at 10) and attaches evidence that DHS has applied for travel documents to Vietnam (see Answer Ex. A / Dkt. 10-1).  To the extent Respondents are implicitly arguing that they are not seeking removal to a third country, Petitioner's declaration states that ICE agents informed him that if they cannot remove him to Vietnam, they will try to remove him to a third country.  (Pet'r Decl. ¶¶ 9, 11 / Dkt. 1 at 37.)  Given this undisputed evidence, this claim appears to be ripe for review.  Moreover, the injunctive relief sought by Petitioner appears to impose a minimal burden on the government, requiring procedures that are entirely or largely required by statute or regulation.

Accordingly, the Court will grant relief on this claim.

**F.      Counts 2, 4, and 5 are Dismissed Without Prejudice.**

Because Petitioner is entitled to release from custody on Grounds 1 and 3, the Court does not need to reach his other claims for relief.  There is no further remedy the Court can grant on these claims.

//

//

//

//

//

//

//

22

**V.   CONCLUSION**

IT IS THEREFORE ORDERED that:

1. Grounds 1 and 3 of the Petition are granted.

2. Grounds 2, 4, and 5 of the Petition are dismissed without prejudice.

3. Respondents shall **immediately release** Long Hoang Nguyen (A# 025-347-761) from custody, subject to the conditions of his 2009 order of supervision.

4. If Respondents have not released Petitioner **within three days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

5. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

6. Respondents are enjoined from removing Petitioner to any country other than Vietnam, unless they provide the following process:

   a. written notice to both Petitioner and Petitioner's counsel in a language/format Petitioner can understand;

   b. a meaningful opportunity, and a minimum of fifteen days, to raise a fear-based claim for CAT protection prior to removal;

   c. if Petitioner is found to have demonstrated "reasonable fear" of removal to the country, Respondents must move to reopen Petitioner's immigration proceedings; and

   d. if Petitioner is not found to have demonstrated a "reasonable fear" of removal to the country, a meaningful opportunity, and a

23

minimum of fifteen days, for the Petitioner to seek reopening of his immigration proceedings.[5]

DATED:  July 28, 2026                          _Karen E. Scott_____

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[5] To the extent Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).

24